The times will be as allotted to counsel. The first case today is 14-1738, United States v. Nelson Velez-Luciano. Good morning, Your Honors. If it pleases the Court, I'm Mark Shea for Mr. Velez-Luciano. Would you pull that mic a little closer to yourself, please? Certainly. Thank you. I'll try and speak up. That's good. All right. Well, the first, I think, issue to deal with here is the waiver issue. And I just want to be clear that I don't think that my client could have made a knowing waiver of his appellate rights as to the special conditions. I've reviewed all of the cases cited by the government claiming that this is waived. And I don't see any case that's on all fours, I guess. First off, a number of the cases deal with an appeal of a sentence, not of special conditions. And so basically the individual got the sentence that was understood to be out there and then tried to appeal the sentence that was imposed. The closest they come is on the Santiago case and the Rojas case. And in those cases, it does involve special conditions. It does involve a waiver of the special conditions. But what we tried to point out in our brief was that in those agreements, and Rojas makes clear in its quote of the agreement that it's the same language that was used in Santiago and other cases. But what about the plea agreement itself? The plea agreement is pretty specific. It says the defendant agrees to waive and permanently surrender his or her right to appeal the judgment and sentence in this case. And the agreement also recommended a 10-year sentence. It's true it didn't mention supervised release, but we have said that supervised release is part of the sentence. I understand you've said supervised release is part of the sentence, but it does have to be knowing and voluntary. And the thing is that in Rojas and Santiago, which are the only ones where there's anything close to this, the waiver included that the defendant waives the terms, conditions, and recommendations. There was nothing like that here. And that's a distinct difference when you look at particularly the severity of the special conditions. Just so I get the argument textually, because the text wouldn't admit of any significance to what the severity of the condition is. As I understand it, you must be saying that the judgment and sentence in this case simply does not include anything other than the carceral portion of the sentence. What I'm saying is that this would be the first plea agreement. But, no, I understand. Just sticking. Imagine we've never had any other case before. Your position is judgment and sentence in this case means only the carceral portion. I don't want to be wedded to that. What I'm saying is that this particular waiver only dealt with the sentence. And is that because you read judgment and sentence only to be the carceral portion? Not because I read it that way, but because in every other plea agreement, they have said that the individual is waiving according to its term, conditions, and recommendations of the plea agreement. I understand that. It's just a simple question. You must be saying, I think, that the judgment and sentence in this case only includes the carceral portion. If you're not saying that, I don't quite understand the argument. Well, in this case, I guess I'm saying that. I'm leery because in the past, as Judge Stahl points out, the court has said that special conditions are necessarily part of the sentence. Well, that would be my next question, is why isn't that true? Well, it isn't true because in every other situation like that, the waiver has told the person to kind of give them the heads up. To me, with terms, conditions, and recommendations, you're pointing out to them that there are these things beyond just the simple sentence within the plea agreement. In this particular plea agreement, it's very truncated, and it just says sentence. And, you know, I do think the situation does matter, and that the person looking at a maximum sentence as part of the plea agreement gives us some insight. But the other is, I'd ask the court to look at the special condition, meaning a year of home detention post-incarceration. That is a severe special condition where he's only allowed out for work. And so, essentially, a 10-year mandatory. Are you saying that whether or not the terms of the plea agreement, by their plain language, would encompass a waiver of an appeal to anything related to the judgment, which would be the special conditions, that given the absence of any description in the plea agreement, in the waiver, of encompassing the special conditions, that it couldn't be a knowing involuntary waiver of those? Could it be an appeal from whatever conditions were imposed? I think that's a better way of putting what I'm trying to get across. I'm trying to say that in every other case but this, that they have alluded to other language. The problem is the terms and conditions in Rojas that are talked about is the predicate. In other words, the requirement is, the precondition is, that you accept that if you're sentenced according to terms and conditions and recommendations, then what follows, then you've waived the right to appeal, and it's the exact same language as here, judgment and sentence in this case. Well, one way to read what happened here is you just have a narrower precondition, which is all that's required is that the court sentence him or her to the agreed upon specific sentence or agreed upon sentencing range. But that precondition was, in fact, complied with, then you go to the next part, which is just did you waive the appeal of the judgment and sentence, which is the exact same language as to what you waived that we said was fine in Rojas. I agree that there is some language, but I am drawing distinctions where there is a distinction in the language. Well, what about the fact that the statute, when it talks about term of imprisonment for felony or misdemeanor, says it may include as a part of the sentence a requirement that the defendant be placed on a term of supervisory release after imprisonment. The statute says it's part of the sentence. And I think you are, it's an ingenious argument, but I think that basically most criminal defense lawyers would understand, as I'm sure was the case here, that the supervised release is a part of that sentence. And it seems to me the argument is interesting, but I don't see how you can square it with the statute and what we have done pretty clearly in the past. Well, I'm making an effort to square it because some of, in a number of the cases at least, the lawyer in the colloquy had said that I went through these special conditions. You know, there are instances where it's been clearer, at least on the record, that the defendant had a real knowledge of the special conditions. And I do think that when you start to range into things like 15-year special conditions where you can't stay outside your house one night without the probation department's approval, you can't have contact with your own minor children. If you lose the waiver issue, do you lose? No. Why? Because to me, this is a miscarriage of justice. I agree that, I mean, look, I'll acknowledge either way, because there are no objections, I'm either under the plain error standard, or I'm under the teeter standard of a miscarriage of justice where the courts say it needs to be egregious cases and it's used sparingly. So it might be, even with the waiver, a tougher standard. To be honest, I had some trouble in preparation drawing just which standard was, it sounded like the one with the waiver was a little worse standard for me, to be honest. Could you just say a little bit about that, because I had trouble following the argument. I understood the argument why you thought it was plain error. But it's not the case that every plain error is a miscarriage of justice. So what's the argument as to why there's a miscarriage of justice here that wouldn't reduce to just saying any time there's a plain error, there's a miscarriage of justice? Well, I would say on the miscarriage of justice is a few different levels. One, it seems to me, and we call it a knee-jerk reaction, in Del Valle Cruz, they call it a boilerplate. But I think, one, the fact that the court just didn't even deal with him as an individual in any way. And the proof of that can be seen, the special conditions include things like co-defendants, where there's no co-defendant. The victim, the judge calls it irrelevant, because I think because the victim had passed, yet it's still included in the conditions. And so you can see how boilerplate this is in its application by even a reading of page 24 and 27 of the sentencing and then of the special conditions. It shows that the court didn't individually tailor this. And to me, when you're not dealing with a human being as an individual, with a defendant as an individual, you are going outside the Constitution, and it is very problematic. And that's exactly how these conditions were applied, in a boilerplate kind of way that in Del Valle in the concurrence is pointed out, and it seems to be kind of a chronic situation in a particular district. Thank you. I know my time is up. Well, you know, looking at the nature of the crime, we have minors. He's a person of authority. Much of this deals with pornography. He uses it as part of his method of getting these young women to do what he wishes them to do. Why aren't these conditions rather typical? Yes, you might call it boilerplate, but in this kind of crime, why aren't these the conditions one would expect to ensure that there wouldn't be a recidivism with some other minor child? What I see is that the integrity of judicial proceedings required looking at it as an individual case. And, for instance, the victims, as you point out here, are women or young girls. Nothing to do with males, and yet he is barred from any contact with his own children, and one of those children is male. Meaning if there's an individualized look, you don't have to draw such a line. Go ahead. Well, the probation officer is given authority to adjust these conditions to the practical realities of how he's doing after he leaves prison. I guess Del Valle basically says that a liberty interest like your connection to your own children is not something that Can you make that argument in your brief? No. So this is one thing, and I beg the court's indulgence here. So when I was writing the brief at the time, Santiago seemed to be the law, and to be honest, I was trying to find my strongest arguments because there weren't objections in my case, and so the standard review was more difficult. In Santiago, he had made an objection to the fact that he could not visit his minor children, and the court upheld that restriction. Del Valle came out after I had briefed this matter, and to be honest, and maybe this is a failing on my part, I didn't read that case until preparing for argument. When I decided not to do a reply brief, I then didn't look again for some time. I'm a trial lawyer generally and was quite busy. But when I noted Del Valle's change in preparation for this, to be honest, we did a lot of research in my office over the last 36 hours to try and figure out how to deal with it. There didn't seem to be any clear way that I was supposed to deal with it. But as the record comes to us, there's nothing in the record that shows that he has a child, is there? There is. Oh, there is? Yeah. Okay. It's in the record that he has two minor children. He has nine children. It's in the PSR. He has two minor children, five and nine. I believe their sexes are made clear in the record. What I was going to ask regarding Del Valle, because I haven't briefed it, the government hasn't had a chance to brief it on the particular issue of children, was if you would consider allowing us to. Why don't you just file a 28-J letter about the relevance of Del Valle as you see it to this and we can decide whether to accept it or not. Yeah, we'll give it within seven days. Okay. Thank you. Anything further? That's it. Thank you. Good morning, Your Honors. May it please the Court, Susan Jorgensen on behalf of the United States. Your Honors, this case is about a 45-year-old man, a teacher, who was put in a position of trust and authority over his victims, both of whom were young students of his, and he abused that position of trust. The only issue raised on appeal is whether or not Mr. Velez-Luciano is barred from challenging the terms of his supervised release because he did not raise the issue below. We would argue that he is barred from raising those issues, that the waiver is valid. You would argue that there is nothing for us to consider that it's a valid waiver? Yes, Your Honors. Well, how do you answer his argument that most of the waiver cases, they're broader statements than we have here. This is sort of a flip statement of what the waiver is. He's making at least a textual argument that this isn't covered, his waiver doesn't cover this issue of the conditions. Your Honors, I would argue that it's very clear in the First Circuit that the supervised release terms are part of the agreement, part of the plea agreement, part of the sentence, rather, and a plea agreement is read as a contract. These were experienced attorneys that had dealt with this type of case before. The conditions that were imposed are fairly standard conditions in the District of Puerto Rico. They were aware of these types of conditions. If they had wished to carve out any exceptions to these conditions, they could have done so in the plea agreement. In addition, I would say to you that in both the, in the plea colloquy, he was made aware that supervised release was a term, was part of the sentence. He was made aware that it was five years to life. In addition, the PSR stated the terms of supervised release. He posed no objection to the PSR. Then again, the sentencing memorandum, there was no objection to the terms of supervised release as stated. I haven't looked at the PSR. Did it say anything about the potential kinds of conditions might be imposed? Yes, I believe it expressly stated all of the conditions in it. Where? Let me see. Okay. So it starts on page 24 of the PSR. It says, starts out with how he shall cooperate with child support. He shall not participate in activity with children under the age of 18. He shall not reside near children of the age of 18. It just goes on for three pages, starting at page 24. Yeah, it's pretty much word for word. Now, I haven't done a compare right with the two in word, but I think it's pretty much word for word. It looks like it to me, just on a visual inspection. There were no objections to the PSR. There were no objections to the PSR. That's correct. And further, in that sentencing, there was no objection to any of the conditions lodged. Could you address the point about the child? Because if I understand it correctly, your vision is that he's consented for all time to having a probation officer bar him from having contact with his own children. Well, I did speak with appeals counsel prior to the argument. And from my understanding, first of all, he does have nine children. It is in the record. Their ages are not in the record. Just the fact that he has nine children with five women is in the PSR. But what appeals counsel was telling me is that seven of those children are now adults. Apparently only two are still minors. One of them, one would be 18 when he's released, and that is a male. The other one would be 15. And that does concern me because that's his preferred age group and gender is a 15-year-old female. You know, so that would continue to concern me. None of that's in the record in terms of the age of the children or the sex of the children? No, I did not see that anywhere in the record, no. I think it is in paragraph 74 of the PSR. Paragraph 74. In any event, when the incarceration sentence is over, these children will not be minors. Well, I guess you're saying one of them will be. One will, a female. She will be 15. She'll be 15. Which is his preferred age range. You're right, Your Honor. I'm sorry. You're correct. My mistake. They do list the ages of the children. My mistake. So, Your Honors, if you have no further questions, I'll move on to the various conditions. We believe that the first restriction that is complained of is the restriction on his Internet usage. I'm sorry. Let me go to the limitations on his profession. I believe that it's evident from the record why these limitations were placed. The terms of supervised release do not say that he is not permitted to engage in anything related to music. In fact, the judge at the sentencing hearing. Could you back up one step before and just explain to me what you think the standard is under miscarriage of justice? Because I take it that if the waiver applies, there was no objection. So, even if we got past the waiver, it would then be plain error. I take it the government's position is that just because something is plain error does not make it a miscarriage of justice that suffices to get around the plea waiver. So, as the government understands it, what is the difference between miscarriage of justice and plain error? Your Honors, I must confess I would have to do a 28-J on that. Oh, I'm sorry. I'm looking at my notes. I would have to do a 28-J on that. I don't believe we included that in the brief. But I can tell you the First Circuit has held that in egregious cases. But their whole argument is that it's a miscarriage of justice so the plea waiver doesn't apply. Right. So, do you have an answer as to why it isn't a miscarriage of justice? The four-part test that I have down is whether the character, clarity, and gravity of the claimed error is that you would consider the character, clarity, and gravity of the claimed error, the impact on the defendant, the possible prejudice to the government, and the extent to which the defendant can be fairly said to have equased in the result. I would say, you know, as to the first point, there is no error. As to the second point, the impact on the defendant, I think, is minimal. And then I would get into going into the different conditions. As to the third point, there is prejudice to the government because we would have to go back and try a case that's now cold, and that presents significant hurdles. Would that be the remedy? I'm sorry? That would be the remedy? Well, if he's not consenting to the terms of supervised release, that might be the remedy because we did strike two counts as a result of him entering into the plea. And I think that these terms are warranted and they're reasonable under the circumstances of this case. I don't know as the prosecuting attorney would be willing to accept a plea at this point if he is not consenting to these terms. The danger that he poses to the public, I think, is very significant. He wouldn't have breached the plea agreement if at the time he'd objected to the conditions. Well, we believe that he would have because the term supervised release is part of the sentence. No, but if he had objected to the PSR's proposed conditions and at sentencing objected to those conditions, well, that would not have been a breach of the plea agreement, would it? We believe that it would have because- Why? What provision of the plea agreement addressed the conditions of supervised release? I see what you're saying. I suppose that's true. If he had raised the objection, it would not have been. But these were the terms that the court imposed. Let's assume that when the PSR came out, he said, I don't agree to these conditions and, therefore, in my view, my waiver doesn't apply to this. What would the government's reaction to that be? We would have objected. You would have objected that there's no plea agreement because that's part of the plea agreement. That's my position. Is there a difference in the standard of review for plain error and a miscarriage of justice? A miscarriage of justice, I believe, is a much more stringent test. I'm sorry? I believe that it's a more stringent test because- More stringent test. There was an error which was plain, which affected the substantial rights of the defendant, such that the competence in the result is undermined. Here, you consider the clarity, gravity of the claimed error, impact of the defendant, prejudice to the government, and the extent to which the government can be said to have acquiesced. I think it's really very clear we did not acquiesce. Why don't you, after the 28-J letter comes in, just do a responsive 28-J letter to it? Thank you.  Thank you, Your Honors.